UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CAPE CHRISTIAN
FELLOWSHIP, INC.,

    Plaintiff,

v.                                     Case No. 2:20-cv-410-JLB-NPM

LANDMARK AMERICAN
INSURANCE COMPANY,

    Defendants.

**ORDER**

Before the Court are Plaintiff's Motion for Relief from Order (Doc. 27) and Plaintiff's Response to Defendant's Motion to Quash and Motion for Protective Order (Doc. 28). For the following reasons, Plaintiff's Motion for Relief from Order (Doc. 27) is granted, and, upon reconsideration, Defendant's Motion to Quash and for Protective Order (Doc. 19) is denied.

**I.    Factual and Procedural Background**

This case concerns an insurance dispute for a loss allegedly caused by Hurricane Irma on or about September 10, 2017. (Doc. 3). Plaintiff Cape Christian Fellowship, Inc. retained the services of Day Adjusting & Consulting ("Day Adjusting") to assess and administer the insurance claim on Cape Christian's behalf. (Doc. 28, p. 2). On September 18, 2019, Day Adjusting submitted a claim for the

loss to the insurer, Defendant Landmark American Insurance Company. (Doc. 28, p. 2; Doc. 28-1, p. 2). As part of the claim-investigation process, Landmark hired GHD Services Inc. ("GHD"), a professional engineering company, to inspect the property. (Doc. 28, p. 3). Landmark's insurance adjuster, Brian O'Connor, coordinated the inspection of the property with Day Adjusting. (Doc. 28, p. 3; Doc. 28-1, pp. 2-3). The in-person property inspection took place on October 28 and 29 of 2019, with Blake Day of Day Adjusting present alongside two GHD employees—a professional engineer, Michael Linehan, and an engineering assistant, Brian Elliot. (Doc. 28, p. 3; Doc. 28-1, p. 3).

On several occasions, Day contacted Landmark to request a coverage determination. (Doc. 28, pp. 3-4; Doc. 28-1, pp. 3-4). On April 29, 2020, Landmark's adjuster contacted Day, stating: "Once the experts' report is finalized and submitted, a coverage determination will be made shortly thereafter." (Doc. 28, p. 4; Doc. 28-1, p. 4). Cape Christian then hired counsel, sent Landmark a letter of representation, and initiated this action on May 15, 2020. (Doc. 1; Doc. 28, p. 4). On July 13, 2020, Landmark's adjuster directly emailed Cape Christian's counsel three documents: (1) a letter constituting a determination of the Claim; (2) an engineering report prepared by Michael Linehan (the "claim-determination report"); and (3) an estimate of repair costs from a firm called Building Solutions & Consulting Inc. (Doc. 28, pp. 4-5; Doc. 28-2, pp. 5-6, 8-18, 20-119, 121-180).

2

On July 30, 2020, and August 3, 2020, Cape Christian served deposition-and-document-production subpoenas on Michael Linehan and his current and former engineering firms, GHD and NV5,[1] seeking information related to the claim-determination report supplied to Cape Christian's counsel as justification for mostly denying the insurance claim. (Docs. 15, 16, 17, 18). Neither Linehan nor his current or former engineering firms lodged any objections to the subpoenas.[2]

On August 28, 2020, Landmark filed a motion to quash, or for protection from, the subpoenas. (Doc. 19). Seeking to quash the subpoenas, Landmark argues the claim-determination report and any related information constitute work-product that should be shielded from discovery (even though the claim-determination report was intentionally sent directly to opposing counsel—a detail misleadingly omitted from Landmark's motion and revealed to the Court only in Cape Christian's response). In the alternative, and seeking protection from the subpoenas, Landmark argues the depositions should not take place until after its expert-disclosure deadline

---

[1] Landmark had engaged Linehan while he was employed by GHD, but by the time the claim-determination report was issued by Linehan, he worked for NV5, Inc. (Doc. 19, p. 3).

[2] Given the deposition dates and locations set forth in the subpoenas, they appear to have been coordinated with the subpoenaed parties. (Doc. 15). GHD, which is based in Tallahassee (Doc. 15, p. 1), was scheduled to be deposed in Tampa on September 8, 2020 (Doc. 16, p. 2). NV5, which is also based in Tallahassee (Doc. 15, p. 1), was scheduled to be deposed in Hollywood, Florida, on September 30, 2020 (Doc. 17, p. 2). And Michael Linehan, who is apparently based in Temple Terrace, Florida, was scheduled to be deposed in New Port Richey, Florida, on October 20, 2020. (Doc. 18). Nonetheless, Landmark asserts that Cape Christian scheduled the depositions without any prior coordination with the defense (Doc. 19, pp. 1-2), which is contrary to the practices expected of counsel in this District. *See* M.D. Fla. Discovery Manual §§ I.A.1, I.A.3, II.A.1, II.C.1 (2021).

because it might retain Linehan as a testifying expert, and—reiterating the point advanced in support of quashing the subpoenas altogether—it further argues that matters related to the claim-determination report should not be subject to discovery because it constitutes work-product. (Doc. 19, pp. 2-5).

Three days after the filing of Landmark's motion, and with the first of the three depositions noticed to take place just eight days later, the Court cancelled the depositions to allow sufficient time for the Court to receive Cape Christian's response and then rule on the motion. (Doc. 20). But Cape Christian failed to file a timely response by September 11, 2020. About two weeks later, on September 23, 2020, the Court conducted a Rule 16 conference to discuss the parties' discovery plan and fashion an appropriate scheduling order. (Doc. 23). Cape Christian still failed to voice any objection to Landmark's motion. So, upon the conclusion of the conference, the Court entered an endorsed order granting Landmark's motion as unopposed (Doc. 26).

The next day, Cape Christian filed a Motion for Relief from Order (Doc. 27) along with a Response to Defendant's Motion to Quash (Doc. 28). Cape Christian subsequently filed an affidavit of paralegal Brenna Bukaty in support of its motion for relief from the Court's order (Doc. 30), and Landmark filed a response (Doc. 31).

## II.   Cape Christian's Motion for Relief from Order

Invoking Rule 60(b), Cape Christian essentially argues that its three attorneys

of record overlooked the need to voice any timely objection to Landmark's motion due to a calendaring mishap committed by a paralegal. Even if there was some form of administrative error by office staff, it is difficult to fathom how all three attorneys somehow lost track of the motion. They served Linehan and his engineering firms with subpoenas; noticed the depositions; went the extra step of filing the notices, subpoenas and returns of service with the Court (even though Rule 5(d)(1)(A) tells them not to); and had their September 8, 2020 deposition of GHD cancelled by the Court just before their September 11 deadline to respond to the motion. Worse yet, when they presumably reviewed the file in preparation for the September 23 conference with the Court, they still managed to somehow overlook the motion to quash.

Compounding the problem, Cape Christian's counsel repeatedly failed to confer with opposing counsel about these issues. They failed to respond to defense counsel's meet-and-confer requests prior to the filing of the motion to quash. (Doc. 19, p. 6). And then they apparently made no attempt to comply with the Court's meet-and-confer requirement before filing their motion for relief (Doc. 31, p. 4), which also failed to include the meet-and-confer certification required by Local Rule 3.01(g). Notably, the importance of complying with Local Rule 3.01(g) is underscored here, because, if Cape Christian had conferred with Landmark prior to filing its motion for relief, it would have learned that its motion is essentially

5

unopposed. (Doc 31, p. 4).

As is too often the case in discovery matters, there is more than enough blame to go around. While the Court appreciates the "candor" in Landmark's response to the motion for relief (*Id.*), the better course would have been to immediately notify Cape Christian that a Local Rule 3.01(g) certificate could be filed apprising the Court of no opposition rather than waiting fourteen days to file a memorandum stating as much. And the most troubling aspect of this entire debacle is the carefully calibrated <u>lack of candor</u> in Landmark's motion to quash.

Incredibly, while advancing an argument that the claim-determination report constituted work-product that should be shielded from discovery, the motion did not so much as hint that Landmark had intentionally delivered the report directly to Cape Christian's counsel and instead left it to the Court to assume otherwise. (Doc. 19; Doc. 28-2). Indeed, the motion misleadingly inferred that Cape Christian was attempting to obtain a consultant's report that had been kept in strict confidence by the defense. (*See* Doc. 19, ¶¶ 8-12, 14, 19). Frankly, the lack of candor by defense counsel is profoundly disappointing because the order granting the motion may not have been entered had they not been so sly.

As previously mentioned, Cape Christian couches its request for relief as a Rule 60(b) motion. Rule 60(b) provides that a court may relieve a party from a "final judgment, order, or proceeding" due to "mistake, inadvertence, surprise, or

6

excusable neglect." The rule also contains a catchall provision for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). But relief in this instance is not appropriate under Rule 60(b) because it only applies to final, not interim, orders. *See Vielma v. Gruler*, No. 6:18-cv-884-Orl-40KRS, 2018 WL 9847998, *1 (M.D. Fla. June 19, 2018) (holding that Rule 60(b) does not apply to interlocutory judgments, orders, or proceedings). An endorsed order granting a motion to quash a subpoena is a far cry from a final order.

Any interlocutory order can be revisited for any reason and at any time prior to final judgment. *See Covenant Christian Ministries, Inc. v. City of Marietta, Georgia*, 654 F.3d 1231, 1242 (11th Cir. 2011); *see also John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88 (1922) ("If it be only interlocutory, the court at any time before final decree may modify or rescind it."); *cf.* Fed. R. Civ. P. 54(b) (providing that interlocutory orders that resolve fewer than all claims "may be revised at any time before the entry of a [final] judgment"). Given the circumstances, Cape Christian's Motion for Relief from Order (Doc. 27) is granted, and the Court will reconsider Landmark's Motion to Quash and for Protective Order (Doc. 19) in light of Cape Christian's response in opposition (Doc. 28).

### III. Landmark's Request to Quash the Subpoenas

In support of its request to quash the subpoenas served on Linehan and his engineering firms, Landmark cites Rule 45(d)(3)(A)(iii), which provides: "the court

for the district where compliance is required[3] must quash or modify a subpoena that … requires disclosure of privileged or other protected matter, if no exception or waiver applies." And invoking the work-product doctrine, Landmark seeks to shield from both deposition and document discovery any inquiry into the claim-determination report (even though it was intentionally delivered to Cape Christian's counsel).

The work-product doctrine codified in Rule 26(b)(3) and (b)(4) provides, with limited exception, that certain items generated "in anticipation of litigation" are protected from discovery. Moreover, work product containing "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" (Fed. R. Civ. P. 26(b)(3)(B)) are rarely discoverable and enjoy "nearly absolute immunity." *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018) (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994)).

A party invoking the work-product doctrine to prohibit discovery bears the burden of demonstrating that the protection applies. *See* Fed. R. Civ. P. 26(b)(5); *Bermuda Dunes Priv. Residences Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 6:16-cv-1801-Orl-37GJK, 2017 WL 7731862, *2 (M.D. Fla. Aug. 18, 2017);

---

[3] Notably, it would be improper for this Court to quash the subpoena served on NV5 because compliance was required in Hollywood, Florida, which lies in the Southern District of Florida.

*Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013). To sustain this burden, the invocation must be particularized (often by way of a privilege log) and supported by evidence. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii), 45(e)(2)(A)(ii); M.D. Fla. Discovery Manual § VI (2021).

Furthermore, in the insurance context, "there is a rebuttable presumption that documents prepared prior to a claim's denial were not created in anticipation of litigation, and conversely, those created after were." *Judith Redden Tr. v. Lincoln Nat'l Life Ins. Co.*, No. 13-cv-81017, 2014 WL 12461357, *2 (S.D. Fla. Aug. 26, 2014). An insurance carrier may rebut this presumption by "'specific evidentiary proof of objective facts, that a reasonable anticipation of litigation existed when the document was produced.'" *Id*. (quoting *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 697 (S.D. Fla. 2007)). Courts determine on a case-by-case basis whether a party has made this showing. *Id*. "But generally, 'the insurer must demonstrate the connection to possible litigation concretely enough to assure a court that it is not simply trying to immunize from discovery its routine claims processing material.'" *Id*. (quoting *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 268 F.R.D. 695, 698 (S.D. Fla. 2010)). Courts have generally found the relevant cutoff should be the moment at which the insurer definitively decided to deny coverage. *Id*.

By definition, work-product protection shields matter from discovery that has not been disclosed. Accordingly, "disclosure of work-product materials to an

9

adversary waives the work-product privilege." *Doe No. 1 v. United States*, 749 F.3d 999, 1008 (11th Cir. 2014). The claim-determination report was intentionally provided to Cape Christian's counsel to justify a process that mostly denied the claim. (Doc. 28-2, pp. 2-3, 5, 20). Thus, Landmark's work-product claim fails for a host of reasons.

Fundamentally, the claim-determination report and associated documents and events that predate its transmission to Cape Christian's counsel[4] relate to the claim processing and not the litigation; and Landmark has failed to make a sufficiently concrete showing to rebut the presumption otherwise. Its claim for protection from discovery therefore fails to satisfy the "in anticipation of litigation" prong of the work-product doctrine. And, even if any of the documents at issue could conceivably fall under the work-product shield, Landmark waived this protection by intentionally delivering the claim-determination report directly to opposing counsel.[5] Moreover, with no privilege log supported by affidavit or declaration, Landmark has failed to make even an initial showing that any responsive documents in the hands of Linehan or his firms (and which could conceivably constitute work-product) contain any

---

[4] The Court finds that the subpoenas do not reach beyond this scope.

[5] Landmark's adjuster, Brian O'Connor, communicated directly with Cape Christian's counsel, rather than through defense counsel, despite the filing of the lawsuit two months prior. (Doc. 28-2, pp. 2-3, 5-6). Thereby, Landmark implicitly acknowledged that the claim-determination report and associated documents and events that predated its transmission to Cape Christian's counsel do not constitute trial-preparation material.

mental impressions, conclusions, opinions, or legal theories of its counsel or representatives. Accordingly, Landmark's request to quash the subpoenas pursuant to Rule 45(d)(3)(A)(iii) is denied.

**IV.   Landmark's Request for Protection from the Subpoenas**

Aside from the work-product claim rejected above, Landmark seeks a protective order that would do nothing more than reiterate potentially applicable rules of procedure. For instance, Landmark asserted that it might retain Linehan to testify as an expert at trial, and so it argued that Cape Christian should be prevented from deposing him about any intended opinion testimony until after his Rule 26(a)(2) report was served. *See* Fed. R. Civ. P. 26(b)(4)(A) (depositions of experts retained to testify at trial "may be conducted only after the report is provided"). But the subpoenas posed no threat to the protections of this rule because they did not reach beyond the claim denial and into subsequently developed opinions that would be offered at trial. And besides, falling victim to the calendar, this argument is essentially moot because Landmark was required to serve its expert reports on April 5, 2021, and so any deposition of Linehan would necessarily occur after the service of his report (if Landmark retained him to offer opinion testimony at trial).

Further, Rule 26(b)(4)(D) provides: "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of

11

litigation or to prepare for trial and who is not expected to be called as a witness at trial." Landmark cannot use this rule to resist the subpoenas for the reasons discussed above. *See Caribbean I Owners' Ass'n, Inc. v. Great Am. Ins. Co. of New York*, No. CIV.A. 07-00829-KD-B, 2009 WL 499500, *1, 3 (S.D. Ala. Feb. 20, 2009) (refusing to quash subpoenas of experts, in part, because their reports and depositions from a prior litigation were already produced). But if Linehan was retained by the defense only as a non-testifying consultant, then Cape Christian is prohibited from exploring Linehan's work for Landmark that occurred <u>after</u> the delivery of his claim-determination report to Cape Christian's counsel. *See Gables Condo. & Club Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 18-23659-CIV, 2019 WL 1317824, at *7 (S.D. Fla. Mar. 22, 2019) (characterizing non-party consultant as an ordinary fact witness "for purposes of the documents it created for submission to [the insurance company] in connection with [the insured's] submission of its hurricane damage claim," but as a non-testifying expert entitled to work product protection when "retained to help prepare for litigation."); *see also Bartram, LLC v. Landmark Am. Ins. Co.*, No. 110-cv-00028-SPM-GRJ, 2011 WL 284448, *3 (N.D. Fla. Jan. 24, 2011) (noting many non-testifying experts may "also play a role in the underlying transaction(s) or event(s) that eventually lead to litigation before they are formally retained as a non-testifying witness to aid a party in preparing for litigation").[6]

---

[6] By utilizing the claim-determination report to process the claim and then delivering the report to

These protections operate by rule, and the parties do not need a protective order that simply restates them. Landmark's request for protection from the subpoenas is therefore denied. Accordingly, Plaintiff's Motion for Relief from Order (Doc. 27) is **GRANTED**, and on reconsideration, Defendant's Motion to Quash and for Protective Order (Doc. 19) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on April 7, 2021.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

---

opposing counsel, Landmark has also waived any Rule 26(b)(4)(D) protection that might have otherwise applied to the report and the associated documents and events that predated its transmission to Cape Christian's counsel.