UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CAPE CHRISTIAN
FELLOWSHIP, INC.,

       Plaintiff,

v.                                                    Case No. 2:20-cv-410-JLB-NPM

LANDMARK AMERICAN
INSURANCE COMPANY,

       Defendant.

_____

## ORDER

Before the court are plaintiff's motion to compel appraisal and abate litigation pending completion of appraisal (Doc. 33); plaintiff's motion to extend certain deadlines set forth in the case management and scheduling order (Doc. 37); and defendant's motions to strike plaintiff's expert witness disclosures (Docs. 44, 61).

## I.    Background

This case concerns an insurance dispute for a loss allegedly caused by Hurricane Irma on or about September 10, 2017. (Doc. 3). Plaintiff Cape Christian Fellowship, Inc. operates a Cape Coral church that was impacted by the storm. (Doc.

1, p. 3; Doc. 3). At the time of the loss, Cape Christian's eight buildings[1] were insured by defendant Landmark American Insurance Company.[2] Under the policy, Cape Christian's buildings had a combined total of $5,078,000 in building coverage. (Doc. 3-1, p. 13). All buildings also had "Named Storm Wind" coverage with a deductible of 5% subject to a minimum of $25,000 per occurrence. (Doc. 3-1, pp. 14, 25).

Before filing suit, Cape Christian retained Day Adjusting & Consulting ("Day Adjusting") to assess and administer its claim. (Doc. 28, p. 2). Two years after the storm—on September 18, 2019—Day Adjusting submitted a claim for the loss to the insurer, Landmark. (Doc. 28, p. 2; Doc. 28-1, p. 2). As part of the claim-investigation process, Landmark retained insurance adjuster Brian O'Connor of Engle Martin & Associates and engineer Michael Linehan[3] to investigate the loss and to inspect the property. (Doc. 19, pp. 2-3, Doc. 35, p. 1; Doc. 53-1, p. 5). O'Connor coordinated the inspection of the property with Day Adjusting. (Doc. 28,

---

[1] The property has several buildings, including a worship center, family center, residence, restaurant, and portable and pavilion buildings. (Doc. 28-2, pp. 8-11, 17-18).

[2] While Cape Christian attached an insurance policy for the period from October 15, 2018, to October 15, 2019, (Doc. 3-1), Landmark admitted that it issued a policy to Cape Christian with effective dates from October 15, 2016, to October 15, 2017 (Doc. 8 ¶¶ 7, 10, 26). Since neither party has directly raised this as an issue, the court will assume, for purposes of ruling on the instant motions, that the insurance policy provided to the court has the same coverages, terms, and conditions as the policy in effect at the time of the claimed losses.

[3] Linehan was formerly employed by professional engineering company GHD Services, Inc., but he is currently employed by another company, NV5, Inc. (Doc. 19, pp. 2-3).

p. 3; Doc. 28-1, pp. 2-3). O'Connor inspected the property on October 9 and 10 of 2019. (Doc. 35, p. 1 n.1). A subsequent in-person property inspection took place on October 28 and 29 of 2019, with T. Blake Day of Day Adjusting present alongside Michael Linehan and an engineering assistant, Brian Elliot. (Doc. 28, p. 3; Doc. 28-1, p. 3; Doc. 35, p. 1 n.1).

Over the course of four months starting on January 9, 2020, T. Blake Day contacted Landmark seven times to request a coverage determination. (Doc. 28, pp. 3-4; Doc. 28-1, pp. 3-4). On April 29, 2020, O'Connor finally responded to Day, stating: "Once the experts' [sic] report is finalized and submitted, a coverage determination will be made shortly thereafter." (Doc. 28, p. 4; Doc. 28-1, p. 4). Cape Christian then hired counsel, sent Landmark a letter of representation, and initiated this action on May 15, 2020, in state court. (Doc. 1; Doc. 28, p. 4). The case was subsequently removed to federal court on June 11, 2020. (Doc. 1).

On July 13, 2020—while this lawsuit was pending—O'Connor directly emailed three documents to Cape Christian's counsel: (1) a letter from O'Connor constituting a determination of the claim; (2) an engineering report from NV5, Inc. prepared by Michael Linehan (the "claim-determination report"); and (3) an estimate of repair costs from a firm called Building Solutions & Consulting Inc. (Doc. 28, pp. 4-5; Doc. 28-2, pp. 5-6, 8-18, 20-119, 121-180). While the claim-determination report estimated damages totaling an RCV of $199,084.36 associated with the

hurricane (Doc. 28-2, p. 175), Landmark agreed to pay only $28,978.16 after depreciation and the applicable deductible (Doc. 28-2, p. 17). (Doc. 33, p. 3; Doc. 33-1, pp. 179-180).

Losses may be determined by replacement cost value (RCV) or actual cash value (RCV minus depreciation). And RCV benefits are limited to the lesser of RCV, policy limits, or the amount of money actually spent to make repairs. (Doc. 3-1, p. 48). Cape Christian seeks an estimated RCV of the damaged property in the amount of $3,009,653.55 (less prior payments and policy deductibles, plus any recoverable depreciation not yet paid). (Doc. 3 ¶¶ 19, 24, 30; Doc. 3-2, p. 140; Doc. 33, p. 2).

## II.    Motion to Compel Appraisal and Abate Litigation

The policy contains a unilateral appraisal provision whereby either party may insist that the amount of loss be determined by an appraisal panel. (Doc. 3-1, p. 43). In relevant part, the policy states:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a.  Pay its chosen appraiser; and
>
> b.  Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

4

(Doc. 3-1, p. 43).

On March 11, 2021, Cape Christian invoked appraisal and named its appraiser. (Doc. 33-1, p. 183). Nearly three weeks later, Landmark responded with its refusal to submit to appraisal. (Doc. 33, p. 4). So, Cape Christian filed its motion to refer resolution of the amount-of-loss issue to an appraisal panel. (Doc. 33).

### A.    Choice of law

Landmark argues that Georgia law applies to this suit and that Cape Christian has forfeited[4] its right to appraisal under both Georgia and Florida law. (Doc. 35). Cape Christian responds that Florida law must apply for various reasons (Doc. 53) and that under Florida law, it has not forfeited its right to appraisal (Doc. 33, pp. 8-9). Cape Christian made no argument to support a finding that it has not forfeited its right to appraisal under Georgia law. (Doc. 53).

The court declines to make a choice-of-law determination because Cape Christian has failed to properly invoke its right to appraisal under both Florida and Georgia law. Under either state's law, Cape Christian has forfeited its right to appraisal both due to delay and acting inconsistent with this right. And under

---

[4] When litigants (and courts) characterize a passive failure to timely assert a right as a "waiver," they inappropriately conflate two distinct concepts: waiver and forfeiture. "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)). The issue here concerns a forfeiture, and so the court will refer to it as such.

Georgia law, Cape Christian forfeited by failing to seek appraisal within the suit-limitations provision in the subject insurance policy.

### B.    Forfeiture

Landmark contends Cape Christian forfeited its right to invoke the policy's alternative dispute resolution mechanism of an appraisal. (Doc. 35, pp. 11-15). In Florida, a "party can [forfeit] its right to appraisal by actively participating in a lawsuit or engaging in conduct inconsistent with the right to appraisal." *Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.*, No. 2:19-cv-81-FtM-38NPM, 2019 WL 3852731, *3 (M.D. Fla. Aug. 16, 2019), *reconsideration denied*, No. 2:19-cv-81-FtM-38NPM, 2019 WL 4861196 (M.D. Fla. Oct. 2, 2019) (citations omitted). But "the question of [forfeiting an] appraisal is not solely about the length of time the case is pending or the number of filings the appraisal-seeking party made. Instead, the primary focus is whether the [movant] acted inconsistently with their appraisal rights." *Fla. Ins. Guar. Ass'n v. Branco*, 148 So. 3d 488, 493 (Fla. 5th DCA 2014).

The two primary factors Florida courts consider when determining whether a party has forfeited its right to appraisal are: (1) the length of time that lapsed between the admission of coverage and the claim for appraisal; and (2) what litigation activities occurred during this period and whether they are inconsistent with the right

6

to appraisal. *Fla. Ins. Guar. v. Monaghan*, 167 So. 3d 511, 512 (Fla. 5th DCA 2015) (citations omitted).

Ever since the hurricane's landfall in September 2017, there has never been any dispute that the windstorm event was a covered peril. And when this lawsuit was initiated nearly three years later, the complaint made no reference to the policy's appraisal provision, let alone any intent to invoke it. (Doc. 3; Doc. 35, p. 2). Moreover, Cape Christian actively and substantially litigated this case as if the amount-of-loss question would be resolved at trial. It pursued discovery of non-party engineers (Docs. 27, 28, 34), served Landmark with written discovery (Docs. 22, 35-5), sought supplemental responses from Landmark (Docs. 35, p. 3; Doc. 35-6, pp. 1-2), responded to written discovery (Doc. 35, p. 4), and produced its Rule 30(b)(6) designee for deposition (Doc. 35, p. 4; Doc. 35-7). All without any mention of an intent to invoke its right to appraisal.[5] Nor did Cape Christian raise the issue of its right to an appraisal during the Rule 16 scheduling conference with the court. (Doc. 23). Rather, it was only after Cape Christian had allowed its March 5, 2021 expert-disclosure deadline to pass without serving any expert disclosures that it first invoked its right to appraisal on March 11, 2021. (Doc. 35, p. 4).

---

[5] On September 2, 2020, Cape Christian filed a Civil Remedy Notice with the Florida Department of Financial Services. It did not request appraisal as a means for Landmark to cure the alleged violations listed in the Notice. (Doc. 35-4).

To justify the timing of its request, Cape Christian cites cases in which courts found appraisal appropriate because the movant had invoked appraisal at the start of litigation and did not act inconsistent with that right. (Doc. 33, pp. 8-9); *see Gonzalez v. State Farm Fire & Cas. Co.*, 805 So. 2d 814, 817-818 (Fla. 3d DCA 2000) (finding insurer did not forfeit right to appraisal because insurer "promptly answered and in the answer, demanded appraisal") *approved and remanded sub nom. Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021 (Fla. 2002); *Fla. Ins. Guar. Ass'n, Inc. v. Castilla*, 18 So. 3d 703, 704-705 (Fla. 4th DCA 2009) (finding insurer did not forfeit its right to appraisal because insurer raised appraisal in its motion to dismiss, in its answer as an affirmative defense, and in its subsequent motion to compel appraisal); *Preferred Mut. Ins. Co. v. Martinez*, 643 So.2d 1101, 1102-1103 (Fla. 3d DCA 1994) (finding insurer never acted inconsistently with its right to appraisal because it filed a motion to dismiss and compel appraisal after the insureds filed suit). However, these cases are inapposite because Cape Christian did not invoke its right to appraisal at the earliest opportunity after the start of litigation.

The circumstances here are in line with cases in which litigation activity was found to constitute a forfeiture of one's right to invoke appraisal. For example, in *Florida Insurance Guarantee v. Rodriguez*, 153 So. 3d 301, 304 (Fla. 5th DCA 2014), the court found the insureds acted inconsistently with, and forfeited, their right to appraisal. There, the insureds waited three years after a covered loss was

admitted before demanding appraisal, during which the insureds filed several discovery requests, pursued other litigation activities including mediation, and never reserved their rights to appraisal. *Id.* at 302-304. And in *Versailles Sur La Mer Condominium Association v. Lexington Insurance Company*, No. 6:18-cv-1125-Orl-37TBS, 2018 WL 3827154, *5 (M.D. Fla. July 24, 2018), report and recommendation adopted, No. 6:18-cv-1125-Orl-37TBS, 2018 WL 3817758 (M.D. Fla. Aug. 10, 2018), the court likewise found a forfeiture, reasoning that the insured failed to invoke appraisal in its complaint or promptly after the case was filed and participated in extensive discovery. *Id.* The court also considered the delay in invoking appraisal during the five-month period between the filing of the complaint in state court and the insured's demand for appraisal even though coverage was admitted three months prior to the filing of suit. *Id.* at *1, 5.

These cases iterate that the two most important considerations Florida courts consider when determining whether appraisal has been forfeited are timing and litigation activities. *See also Fla. Ins. Guar. v. Monaghan*, 167 So. 3d 511, 512-513 (Fla. 5th DCA 2015) (finding insureds forfeited appraisal by serving discovery requests, reasserting demand for jury trial, and participating in a case management conference and mediation during eleven-month period between admission of coverage and their demand for appraisal); *Fla. Ins. Guar. v. Reynolds*, 148 So. 3d 840, 841 (Fla. 5th DCA 2014) (finding forfeiture when insureds had moved to

compel discovery, sought and obtained a partial summary judgment, and noticed the case for trial during roughly fourteen-month period between admission of coverage and their demand for appraisal).

An analogous case is *CMR Construction & Roofing, LLC v. Empire Indemnity Insurance Company*, No. 2:18-cv-779-FtM-99UAM, 2019 WL 2281678 (M.D. Fla. May 29, 2019), in which the court found the insured's assignee forfeited its right to invoke appraisal. The insurer admitted coverage, and the insured thereafter assigned benefits to CMR, which performed repair services. *Id.* at *1. Approximately seven months later, CMR filed suit in state court but did not invoke appraisal, and CMR extensively litigated in state court by serving the insurer with multiple discovery requests. *Id.* at *2, 5. After the case was removed to federal court, and after the Rule 16 scheduling conference and the entry of a scheduling order, CMR filed its motion to compel appraisal. *Id.* at *5. Ultimately, the court found CMR "acted inconsistently with its right to appraisal by seeking to benefit from conducting discovery and otherwise litigating the case for seven months before invoking appraisal, with prejudice undoubtedly inuring to [the insurer] via attorney's fees and costs." *Id.* Similarly, Cape Christian did not seek, or even suggest it would seek, appraisal until more than three years after the covered peril and nearly a year after it had actively litigated the amount-of-loss question as if it were going to be resolved at a jury trial.

Additionally, Cape Christian made no argument to rebut Landmark's assertion that Cape Christian forfeited appraisal under Georgia law. (Doc. 53). If Georgia law applies, the result is the same. In Georgia, a party forfeits its right to invoke appraisal by inaction and delay. *Williams v. Southern General Ins. Co.*, 440 S.E.2d 753, 754 (Ga. Ct. App. 1994). And Georgia courts have found that appraisal provisions are subject to the suit-limitations provision in an insurance policy. *See Aaron v. Georgia Farm Bureau Mut. Ins. Co.*, 677 S.E.2d 419, 421 (Ga. Ct. App. 2009) (rejecting argument that one-year limitation provision in insurance policy only applies to lawsuits and not to appraisal); *Shelter Am. Corp. v. Georgia Farm Bureau Mut. Ins. Co.*, 433 S.E.2d 140, 142 (Ga. Ct. App. 1993).

The suit limitation in the subject insurance policy prohibits legal action to be brought more than two years after the date of the loss.[6] (Doc. 3-1, p. 59; Doc. 35, p. 10). The date of the loss occurred on September 10, 2017, but appraisal was not invoked until about three and a half years after the loss. (Doc. 3 ¶¶ 9-11; Doc. 35, p. 4). In fact, Cape Christian did not even initiate the claim process until September 18, 2019—over two years after the loss. (Doc. 28, p. 2). Under Georgia law, the two-

---

[6] The policy states in relevant part:

**COMMERCIAL PROPERTY CONDITIONS**
**D. LEGAL ACTION AGAINST US**
No one may bring a legal action against us under this Coverage Part unless:
  1. There has been full compliance with all of the terms of this Coverage Part; and
  2. the action is brought within 2 years after the date on which the direct physical loss or damage occurred.
(Doc. 3-1, p. 59; Doc. 35, p. 10).

11

year suit-limitations period likewise bars Cape Christian's delayed invocation of appraisal.

## III.   Motion to Extend Certain Deadlines

On May 4, 2021, Cape Christian moved to extend certain deadlines. (Doc. 37). Specifically, Cape Christian sought to extend its already expired expert-disclosure deadline of March 5, 2021; the June 14, 2021 discovery deadline; and the August 6, 2021 dispositive and *Daubert* motions deadline. On May 5, 2021, the court ordered Landmark, in its response to the motion, to state whether and when Cape Christian served any expert reports, which were due on March 5, 2021, and if so, briefly summarize the disclosed opinions. (Doc. 40). Landmark advised that Cape Christian did not serve any expert disclosures on March 5, 2021, but that Landmark had timely disclosed its own experts by its April 5, 2021, deadline. (Doc. 41, p. 2). Only on its May 5, 2021, rebuttal deadline did Cape Christian serve a document titled "Plaintiff's Disclosure of Expert Witnesses and Rebuttal Expert Witnesses" that is the subject of a motion to strike. (Doc. 41, p. 2; Doc. 41-2; Doc. 44).

In the case management report, the parties agreed Cape Christian would serve its expert reports by February 5, 2021. (Doc. 10, p. 1). And during the Rule 16(b)(1)(B) conference, the court inquired whether the proposed plaintiff-expert-disclosure deadline was feasible. Plaintiff counsel responded they could meet that deadline and had no objection. But to ensure Cape Christian had adequate time to

prepare and serve its expert reports, the court set a March 5, 2021 disclosure deadline. (Doc. 24). Yet this deadline came and went. And after missing its expert-disclosure deadline, Cape Christian attempted to invoke appraisal.

District courts are required to enter a scheduling order that limits the time for discovery, and they may set other deadlines—such as expert disclosure deadlines—to ensure orderly progress toward the discovery cutoff. Fed. R. Civ. P. 16(b)(3). When a deadline appears in a scheduling order and a motion for more time is filed, "Rule 16 is the proper guide for determining whether a party's delay may be excused." *Destra v. Demings*, 725 F. App'x 855, 859 (11th Cir. 2018). Under Rule 16(b)(4), "a schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Under this standard, the party requesting the extension demonstrates good cause only if, despite its diligence, the party cannot meet the deadline. *See* Fed. R. Civ. P. 16 (1983 Advisory Committee Notes); *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009) (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998)). A party seeking an extension of an expired deadline must also show excusable neglect for not seeking the extension prior to the deadline's expiration. Fed. R. Civ. P. 6(b)(1)(B).

As the scheduling order expressly warns litigants, the court disfavors extensions of the scheduled deadlines. (Doc. 24, p. 2). The only reason provided for extending deadlines was to afford the court time to rule on the appraisal motion.

(Doc. 37, p. 2). And Cape Christian initially made no effort to explain why it missed its expert disclosure deadline (Docs. 37, 65). Only in briefing on a separate motion does Cape Christian attempt to explain why it missed its deadline—plaintiff counsel "inadvertently recorded the deadline of disclosing [Cape Christian's] expert witnesses onto another matter's notes, along with the task of arranging expert witness reports." (Doc. 56, p. 1; *see also* Doc. 65, p. 7).

But even the service of Landmark's expert reports on April 5, 2021, did not trigger Cape Christian to act. And there is no explanation why all *three* of Cape Christian's attorneys did not heed this deadline and failed to take any steps to retain and disclose experts until after the deadline passed. In fact, on April 7, 2021, the court admonished Cape Christian for an unrelated calendaring mishap (Doc. 34, pp. 4-5), yet plaintiff counsel still failed to act with diligence since the motion for mote time was not filed until a month later. Indeed, to put it quite charitably, Cape Christian has been careless. And "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *ConSeal Int'l Inc. v. Neogen Corp.*, No. 19-cv-61242, 2020 WL 2494596, *6 (S.D. Fla. May 14, 2020) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

Foregoing timely service of expert reports or the timely filing of a motion for more time in the face of a court-ordered deadline is a perfect archetype of the absence of diligence. And Cape Christian asks the court to extend the expert-report deadline

to accommodate this lack of diligence. But the court is bound by the Eleventh Circuit's interpretation of Rule 16's good cause standard. *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) ("This [Rule 16] good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'") (quoting the rule's advisory committee's note); *see also Asokan v. Am. Gen. Life Ins. Co.*, 302 F. Supp. 3d 1303, 1312 (M.D. Fla. 2017) (explaining litigants cannot be permitted to treat a scheduling order as a "frivolous piece of paper idly entered, which can be cavalierly disregarded without peril"). As a result, the court must decline Cape Christian's request and deny its motion to the extent it seeks an extension of the expert-disclosure deadline.

For the first time in a reply brief[7] filed *after* the discovery deadline, Cape Christian argues it requires more time to depose the corporate representative of GHD Services Inc., which failed to appear for a scheduled deposition on June 10, 2021, and which could not be rescheduled due to defense counsel's unavailability. Cape Christian also requests an extension to depose additional representatives from NV5 Inc. due to the lack of knowledge of the designated corporate representative, Michael Linehan. And finally, Cape Christian argues that Landmark requires an extension to

---

[7] As a general matter, "arguments raised for the first time in a reply brief are not properly before a reviewing court." *Grasso v. Grasso*, 131 F. Supp. 3d 1303, 1309 (M.D. Fla. 2015). Nevertheless, the court will consider the full set of circumstances.

depose Cape Christian's expert witnesses once the two pending motions to strike are resolved. (Doc. 65, pp. 2-3).

While the discovery period is now closed, the deposition of GHD's corporate representative was scheduled on June 8, 2021. But the witness did not appear through no fault of the parties. Michael Linehan was designated as NV5's corporate representative, but apparently he lacked sufficient knowledge about the handling and submission of the relevant NV5 engineering report and whether, during inspection of the property, NV5 discovered mold damage and created a report documenting the same. Linehan identified two other NV5 representatives—Jan Scarberry and Bob Mulcahy—who can likely address these questions. (Doc. 65, pp. 2-5).

Therefore, Cape Christian's motion is **DENIED in part** to the extent it seeks an extension of the expert-disclosure deadline but **GRANTED in part** to the extent Cape Christian seeks to extend the dispositive and *Daubert* motions deadlines as well as the remaining deadlines thereafter. The court will not extend the discovery period, but Cape Christian may depose the corporate representative of GHD Services Inc., Jan Scarberry, and Bob Mulcahy by **May 31, 2022**. By **May 31, 2022**, Landmark may depose T. Blake Day and Timothy Day as Rule 26(a)(2)(C) witnesses, as further discussed in the following section of this order. No further discovery is permitted unless agreed to by the parties.

## IV.    Motions to Strike Cape Christian's Expert Witness Disclosures

Landmark seeks to strike [8] Cape Christian's untimely expert witness disclosures—specifically experts T. Blake Day (hybrid witness), Timothy Day (hybrid witness), James Hartney (engineer), and Andrew Sharpless (mold remediator and assessor). (Docs. 44, 61). Landmark filed its first motion to strike on May 10, 2021, when only T. Blake Day, Timothy Day, and James Hartney were named as Cape Christian's experts. (Doc. 44). Cape Christian's first (and incomplete) expert disclosure on May 5, 2021, included a brief synopsis of anticipated testimony for each witness, Hartney's curriculum vitae, Hartney's deposition fee schedule, Hartney's W-9 tax form, and Hartney's deposition history. (Doc. 44-2). Notably, Cape Christian did not retain Hartney to serve as an expert witness until May 4, 2021, ***two months after its expert-disclosure deadline***. (Doc. 56, p. 3). Naturally, his report was not completed by the following day. In fact, this first disclosure did not contain a signed report authored by *any* of the three listed witnesses. (Doc. 44, p. 3).

---

[8] The admissibility of expert testimony is governed by Federal Rule of Evidence 702, and the proper method to challenge the reliability of expert testimony is by a motion in limine pursuant to *Daubert*. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Therefore, the court limits its review to whether Cape Christian's initial and amended expert disclosures and reports are timely and complete. The admissibility of any opinions is an issue for a later day.

Then, on May 20, 2021, Cape Christian served an "Amended Disclosure of Expert Witnesses" that added Andrew Sharpless to the list of experts. (Doc. 61-3).[9] With this amended disclosure, Cape Christian served Hartney's report as well as Sharpless's report, curriculum vitae, fee schedule, and known[10] expert witness testimony history. (Doc. 56, p. 6; Docs. 61-3, 61-4). That same day, Cape Christian responded to the first motion to strike and, in light of the amended disclosure, made additional arguments on behalf of Andrew Sharpless. (Doc. 56). However, by June 2, 2021, Landmark claims Cape Christian had still not served it with any written expert reports from either T. Blake Day or Timothy Day. (Doc. 60, pp. 4-5; Doc. 61, p. 2).

On June 3, 2021, Landmark filed a second motion to strike directed to Cape Christian's amended expert disclosures. (Doc. 61). Rather than address any of Landmark's arguments raised in either the reply brief for the first motion (Doc. 60) or in the second motion to strike (Doc. 61), Cape Christian responded to the second motion by simply copying its response to the first motion to strike. (Doc. 64, p. 1 n.1. *Compare* Doc. 56 *with* Doc. 64).

---

[9] Plaintiff counsel's sworn declaration claims he served the amended expert disclosures on May 21, 2021 (Doc. 56-1 ¶ 12), but the certificate of service on the disclosures indicates they were served on May 20, 2021 (Doc. 61-3, p. 3).

[10] The amended disclosure qualifies Sharpless's expert testimony history as follows: "Mr. Sharpless believes there to be a few more instances of testimony for this history, but cannot currently locate related records. He will continue to search for this information and will provide updated information if possible." (Doc. 61-3, p. 2).

Federal Rule of Civil Procedure 26(a) requires parties to timely disclose all bases of their expert opinions. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009). If an expert report is untimely or incomplete, Rule 37(c) controls. Under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Rule 37 allows district courts to exclude or strike expert witnesses as a sanction for violating Rule 26. *Mitchell*, 318 F. App'x at 824. The burden of establishing this failure lies with the non-disclosing party. *Id.*

Cape Christian argues the untimeliness of the disclosures was substantially justified because plaintiff counsel "inadvertently recorded the deadline of disclosing [its] expert witnesses onto another matter's notes, along with the task of arranging expert witness reports." (Doc. 56, p. 1; Doc. 56-1 ¶ 2). On or about April 27, 2021, plaintiff counsel realized this error because he noticed Landmark sought to depose various witnesses but not Cape Christian's intended expert witnesses. (Doc. 56, p. 2; Doc. 56-1 ¶¶ 3-4). Purportedly wary of actively pursuing litigation to avoid impairing its then-pending motion to compel appraisal, plaintiff counsel "was hesitant to immediately disclose expert reports for fear of [forfeiting Cape Christian's] right to invoke appraisal." (Doc. 56, p. 2). But Cape Christian makes no

effort to explain why Andrew Sharpless was disclosed even beyond the rebuttal deadline. (Doc. 56, p. 6).

As previously discussed, Cape Christian has failed to show that despite all due diligence it could not timely disclose its experts by the March 5, 2021 deadline. Moreover, the excuses offered by Cape Christian simply don't add up. For example, Cape Christian would have the court believe that the service of Landmark's disclosures on April 5, 2021, somehow failed to alert Cape Christian that it had yet to serve its own; that Cape Christian was reluctant to "immediately disclose expert reports" in April when it had not retained the experts until May; or that the retention and disclosure of experts in May does not suggest that the failure to retain experts prior to March was the result of a deliberate choice. As such, the court finds no substantial justification for the untimely disclosures.[11]

Cape Christian also contends that its untimely disclosures were harmless. Serving incomplete expert disclosures for the first time on and after its rebuttal deadline does not rectify the prejudice adhering to Landmark, particularly as to Hartney and Sharpless. Landmark correctly remarks that the purpose of the

---

[11] Not only are Cape Christian's expert reports untimely, but they are also not proper rebuttal reports. Nor does Cape Christian attempt to characterize them as such. The purpose of rebuttal evidence, including rebuttal witnesses "is to explain, repel, counteract, or disprove the evidence of the adverse party, and the decision to permit rebuttal testimony is one that resides in the sound discretion of the trial judge." *Maryland Cas. Co. v. Earth Inspired Living, LLC*, 6:12-cv-1033-Orl-19, 2013 WL 869394, *2 (M.D. Fla. Mar. 7, 2013) (citing *United States v. Frazier*, 387 F.3d 1244, 1269 (11th Cir. 2004) (en banc)).

staggered expert disclosure deadlines is to allow a plaintiff to present expert reports in support of its case-in-chief, followed by the defendant's reports in support of its defenses and rebuttal, and finally followed by plaintiff's rebuttal reports. (Doc. 44, pp. 4-5). Without Cape Christian's timely disclosure of expert reports, Landmark was unable to rebut issues addressed by Cape Christian's experts. Put simply, Cape Christian's failure to timely disclose Hartley and Sharpless was not harmless. Therefore, the expert disclosures from James Hartney and Andrew Sharpless are **STRICKEN**.

The analysis as to whether the untimely disclosures from the two Day witnesses is harmless poses a different question because they are proposed "hybrid" witnesses. Cape Christian contends the requirements of Rule 26(a)(2)(B) for providing an expert report do not apply because the Day witnesses were not retained or specially employed to provide expert testimony in this case.[12] Rather, it claims the less stringent disclosure requirements of Rule 26(a)(2)(C) apply instead. (Doc. 56, pp. 10-11). Cape Christian is correct on this point.

---

[12] The estimate of damages (Doc. 3-1) authored by Timothy Day would not be a proper Rule 26(a)(2)(B) expert disclosure. This type of expert report must be written, prepared, and signed by the witness, and it must include the enumerated items in the rule. Fed. R. Civ. P. 26(a)(2)(B). The estimate at issue is not signed, nor does it include any of the enumerated subsection (B) items, except the estimate itself could be considered a supportive exhibit. (Doc. 3-2). Importantly, there are no opinions or supporting reasons for such opinions. Simply stated, this document does not qualify under the more extensive Rule 26(a)(2)(B) expert witness disclosure—it just purports to be a "detailed estimate … that reflects the acceptable repair and/or restoration of all items directly and physically damaged by hurricane Irma." (Doc. 3-2, p. 2).

Rule 26(a)(2)(C) disclosures are "considerably less extensive than the disclosure required by Rule 26(a)(2)(B)." Fed. R. Civ. P. 26 (2010 Advisory Committee Notes). "In providing guidance as to how to decide in which pigeonhole a particular expert belongs, [Rule 26] offers only one criterion: whether the witness has been retained or specially employed to provide the expert testimony." *Kondragunta v. Ace Doran Hauling & Rigging Co.*, No. 1:11-cv-01094-JEC, 2013 WL 1189493, *10 (N.D. Ga. Mar. 21, 2013). The Days are public adjusters that Cape Christian hired to process its insurance claim. They were not retained or specially employed to provide expert testimony in this case. (Doc. 56, p. 10). Rather, Day Adjusting & Consulting—employing both Day witnesses—was retained "to assess and administer the Claim on [Cape Christian's] behalf in order to properly restore the Property to its pre-loss condition." (Doc. 3 ¶ 13). So, the less stringent requirements of subsection (C) apply. *See generally Square At Key Biscayne Condo. Ass'n, Inc. v. Scottsdale Ins. Co.*, No. 13-24222-CIV, 2014 WL 11946881, *4 (S.D. Fla. Oct. 23, 2014) (acknowledging parties' concession that plaintiff's public adjuster was involved in claim since its inception and thereby finding he was not retained or specially employed, exempting him from the more stringent requirements of Rule 26(a)(2)(B)).

An expert disclosure under subsection (C) must state both "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence

702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). According to Cape Christian's amended expert disclosure, each Day witness:

> will be offered as a Rule 26(a)(2)(C) hybrid fact/expert witness who will testify as to his opinions, and the bases therefor, regarding the following: the condition of the insured property after the date of loss; the observations of the witness's inspection of the property; the damage, costs of repair, and estimated costs of repair relating to the reported loss; the cause and the extent of damage to the insured property arising from of the loss; the property insurance policy and claim relating to the insured property and the reported loss; and the scope of repairs necessary to return the insured property to its pre-loss condition.

(Doc. 61-3, pp. 1-2). Regardless, Landmark has had the nearly 150-page estimate from Day Adjusting & Consulting since at least the beginning of this litigation. (Doc. 3-2; Doc. 56, p. 12). The estimate includes detailed figures and itemized descriptions. (Doc. 3-2). Cape Christian also listed the two Day witnesses in its initial disclosures. (Doc. 56, p. 12; Doc. 56-1, pp. 594-601). The combination of the estimate and initial disclosures satisfied the requirements of Rule 26(a)(2)(C)(i)-(ii). So Landmark has been on notice since the beginning of this suit about the subject matter, facts, and opinions to which the Days could be expected to testify. Therefore, the untimely disclosure of the Day witnesses was harmless, and Cape Christian may proceed with T. Blake Day and Timothy Day as Rule 26(a)(2)(C) witnesses.

## V.  Conclusion

Accordingly, plaintiff's motion to compel appraisal and abate litigation (Doc. 33) is **DENIED**. Plaintiff's motion to extend deadlines (Doc. 37) is **DENIED in**

**part** and **GRANTED in part**. An amended case management and scheduling order will issue separately. And defendant's motions to strike plaintiff's expert witness disclosures (Doc. 44) and to strike plaintiff's amended expert witness disclosures (Doc. 61) are **GRANTED in part** and **DENIED in part**.

        **ORDERED** on March 31, 2022.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE